MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
DUQUE FALLON, EDGAR ROLANDO
GUTIERREZ LOPEZ, EUTIQUIO LEON
GARCIA, HUGO ALEJANDRO
GALLARDO, JOSE GARCIA, and
GILBERTO LUCAS TOLENTINO,
*individually and on behalf of others similarly*
*situated,*

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b) AND RULE 23**
**CLASS ACTION**

*Plaintiffs*,

**ECF Case**

-against-

18 GREENWICH AVENUE, LLC  (D/B/A
ROSEMARY'S), CARLOS SUAREZ , WADE
MOSES , CINDI BYUN , RUFIO LERMA ,
SEAN WEBSTER , JENNIFER DOE, and
ERIN GOTTHELF ,

*Defendants.*

--------------------------------------------------------X

Plaintiffs Duque Fallon, Edgar Rolando Gutierrez Lopez, Eutiquio Leon Garcia, Hugo

Alejandro Gallardo, Jose Garcia, and Gilberto Lucas Tolentino , individually and on behalf of

others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael

Faillace & Associates, P.C., upon their knowledge and belief, and as against 18 Greenwich

Avenue, LLC (d/b/a Rosemary's), ("Defendant Corporation"), Carlos Suarez,  Wade Moses,  Cindi

Byun,  Rufio Lerma,  Sean Webster,  Jennifer Doe, and  Erin Gotthelf, ("Individual Defendants"),

(collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants 18 Greenwich Avenue, LLC (d/b/a Rosemary's), Carlos Suarez, Wade Moses, Cindi Byun, Rufio Lerma, Sean Webster, Jennifer Doe, and Erin Gotthelf.

2.       Defendants own, operate, or control an Italian restaurant, located at 18 Greenwich Avenue, New York, NY 10011 under the name "Rosemary's".

3.      Upon information and belief, individual Defendants Carlos Suarez, Wade Moses, Cindi Byun, Rufio Lerma, Sean Webster, Jennifer Doe, and Erin Gotthelf, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were employed as a bartender, a barback, busboys, waiters, delivery workers and food runners at the restaurant located at 18 Greenwich Avenue, New York, NY 10011.

5.      Plaintiffs were ostensibly employed as a bartender, a barback, busboys, waiters, delivery workers and food runners. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to polishing wine glasses, sanitizing tables, organizing flowers, tables, menus, candles, carrying wine boxes to and from basement, stocking liquor in the refrigerator, sweeping, mopping, buying food from the markets, drying silverware, cleaning windows, carrying dirty dishes to  the basement, registering orders, packing for deliveries, sweeping the front of the restaurant, throwing out the garbage, changing the lightbulbs, cutting bread,  (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.    Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.    Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.    Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.    Defendants employed and accounted for Plaintiffs as a bartender, a barback, busboys, waiters, delivery workers, food runners in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.    Regardless, at all relevant times, Defendants paid Plaintiffs at the lowered tip-credited rate.

12.    However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.    Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as a bartender, a barback, busboys, waiters, delivery workers, food runners instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the lower tip-credit rate.

14.    In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

15.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18.    Plaintiffs now bring this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate an Italian restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

21.     Plaintiff Duque Fallon ("Plaintiff Fallon" or "Ms. Fallon") is an adult individual residing in Queens County, New York.

22.     Plaintiff Fallon was employed by Defendants at Rosemary's from approximately April 27, 2017 until on or about October 2017.

23.     Plaintiff Edgar Rolando Gutierrez Lopez ("Plaintiff Gutierrez" or "Mr. Gutierrez") is an adult individual residing in Bronx County, New York.

24.     Plaintiff Gutierrez was employed by Defendants at Rosemary's from approximately September 1, 2015 until on or about September 15, 2016.

25.     Plaintiff Eutiquio Leon Garcia ("Plaintiff Leon" or "Mr. Leon") is an adult individual residing in Kings County, New York.

26.     Plaintiff Leon was employed by Defendants at Rosemary's from approximately September 2013 until on or about August 30, 2019.

27.     Plaintiff Hugo Alejandro Gallardo ("Plaintiff Gallardo" or "***Plaintiff Gender*** Gallardo") is an adult individual residing in Union County, New Jersey.

28.     Plaintiff Gallardo was employed by Defendants at Rosemary's from approximately August 2016 until on or about February 2019.

29.     Plaintiff Jose Garcia ("Plaintiff Garcia" or "Ms. Garcia") is an adult individual residing in Queens County, New York.

30.     Plaintiff Garcia was employed by Defendants at Rosemary's from approximately April 25, 2019 until on or about August 16, 2019.

31.     Plaintiff Gilberto Lucas Tolentino ("Plaintiff Tolentino" or "Mr. Tolentino") is an adult individual residing in Kings County, New York.

32.    Plaintiff Tolentino was employed by Defendants at Rosemary's from approximately February 2018 until on or about September 28, 2019.

*Defendants*

33.    At all relevant times, Defendants owned, operated, or controlled an Italian restaurant, located at 18 Greenwich Avenue, New York, NY 10011 under the name "Rosemary's".

34.    Upon information and belief, 18 Greenwich Avenue, LLC (d/b/a Rosemary's) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 18 Greenwich Avenue, New York, NY 10011.

35.    Defendant Carlos Suarez is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Carlos Suarez is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Carlos Suarez possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

36.    Defendant Wade Moses is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Wade Moses is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Wade Moses possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

37.     Defendant Cindi Byun is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Cindi Byun is sued individually in her capacity as owner, officer and/or agent of Defendant Corporation. Defendant Cindi Byun possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

38.     Defendant Rufio Lerma is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Rufio Lerma is sued individually in his capacity as a manager of Defendant Corporation. Defendant Rufio Lerma possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

39.     Defendant Sean Webster is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Sean Webster is sued individually in his capacity as a manager of Defendant Corporation. Defendant Sean Webster possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

40.     Defendant Jennifer Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jennifer Doe is sued individually in her capacity as a manager of Defendant Corporation. Defendant Jennifer Doe possesses

operational control over Defendant Corporation and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

41.     Defendant Erin Gotthelf is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Erin Gotthelf is sued individually in her capacity as a manager of Defendant Corporation. Defendant Erin Gotthelf possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

42.     Defendants operate an Italian restaurant located in the West Village section of Manhattan in New York City.

43.     Individual Defendants, Carlos Suarez, Wade Moses, Cindi Byun, Rufio Lerma, Sean Webster, Jennifer Doe, and Erin Gotthelf, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

44.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

45.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

46.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

47.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

48.     Upon information and belief, Individual Defendants Carlos Suarez, Wade Moses, and Cindi Byun operate Defendant Corporation as either an alter ego of themselves and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

    b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c)  transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

    e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

    f)  intermingling assets and debts of their own with Defendant Corporation,

    g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

    h)  Other actions evincing a failure to adhere to the corporate form.

49.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

50.    In each year from 2013 to 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

51.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

52.    Plaintiffs are former employees of Defendants who ostensibly were employed as a bartender, a barback, busboys, waiters, delivery workers, food runners. However, they spent over 20% of each shift performing the non-tipped duties described above.

53.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Duque Fallon*

54.    Plaintiff Fallon was employed by Defendants from approximately April 27, 2015 until on or about October 2017.

55.    Defendants ostensibly employed Plaintiff Fallon as a busser, a bartender, and a barback.

56.    However, Plaintiff Fallon was also required to spend a significant portion of her work day performing the non-tipped duties described above.

57.     Although Plaintiff Fallon ostensibly was employed as a busser, a bartender, and a barback, she spent over 20% of each day performing non-tipped work throughout her employment with Defendants.

58.     Plaintiff Fallon regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

59.     Plaintiff Fallon's work duties required neither discretion nor independent judgment.

60.     From approximately April 27, 2015 until on or about September 2015, Plaintiff Fallon worked from approximately 10:00 a.m. until on or about 3:00 p.m., on Mondays and Tuesdays, from approximately 4:00 p.m. until on or about 10:00 p.m., on Fridays, from approximately 8:00 a.m. to 9:00 a.m. until on or about 4:00 p.m., on Saturdays, and from approximately 8:00 a.m. to 9:00 a.m. until on or about 4:00 p.m., on Sundays (typically 35 to 36 hours per week).

61.     From approximately October 2015 until on or about December 27, 2016, Plaintiff Fallon worked from approximately 5:00 p.m. until on or about 10:30 p.m., on Mondays and Tuesdays, from approximately 4:00 p.m. until on or about 10:00 p.m., on Fridays, from approximately 8:00 a.m. to 9:00 a.m. until on or about 4:00 p.m., on Saturdays, and from approximately 8:00 a.m. to 9:00 a.m. until on or about 4:00 p.m., on Sundays (typically 36 to 37 hours per week).

62.     From approximately December 28, 2016 until on or about October 2017, Plaintiff Fallon worked from approximately 5:00 p.m. until on or about 9:00 p.m. to 11:00 p.m., Wednesdays through Sundays (typically 20 to 30 hours per week).

63.     Throughout her employment, Defendants paid Plaintiff Fallon her wages by check.

64.     From approximately January 2015 until on or about December 2016, Defendants paid Plaintiff Fallon $5.00 per hour.

65.     From approximately January 2017 until on or about October 2017, Defendants paid Plaintiff Fallon $7.50 per hour.

66.     Defendants deducted $2.50 per shift from Plaintiff Fallon's weekly paycheck for meals she never ate.

67.     Plaintiff Fallon was never notified by Defendants that her tips were being included as an offset for wages.

68.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Fallon's wages.

69.     On a number of occasions, Defendants required Plaintiff Fallon to sign a document, the contents of which she was not allowed to review in detail.

70.     Defendants took improper and illegal deductions from Plaintiff Fallon's wages; specifically, Defendants deducted $2.50 per shift from Plaintiff Fallon's weekly wages for meals she never ate.

71.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Fallon regarding overtime and wages under the FLSA and NYLL.

72.     Defendants did not provide Plaintiff Fallon an accurate statement of wages, as required by NYLL 195(3).

73.     Defendants did not give any notice to Plaintiff Fallon, in English and in Spanish (Plaintiff Fallon's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

74.     Defendants required Plaintiff Fallon to purchase "tools of the trade" with her own funds—including uniform shoes, jeans, and shirts.

*Plaintiff Edgar Rolando Gutierrez Lopez*

75.     Plaintiff Gutierrez was employed by Defendants from approximately September 1, 2015 until on or about September 15, 2016.

76.     Defendants ostensibly employed Plaintiff Gutierrez as a delivery worker, a busboy and a food runner.

77.     However, Plaintiff Gutierrez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

78.     Although Plaintiff Gutierrez ostensibly was employed as a delivery worker, a busboy and a food runner, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

79.     Plaintiff Gutierrez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

80.     Plaintiff Gutierrez's work duties required neither discretion nor independent judgment.

81.     From approximately September 2015 until on or about November 2015, Plaintiff Gutierrez worked from approximately 4:00 p.m. until on or about 11:30 p.m., Sundays through Fridays (typically 45 hours per week).

82.     Throughout his employment, Defendants paid Plaintiff Gutierrez his wages by check.

83.     From approximately September 2015 until on or about December 2015, Defendants paid Plaintiff Gutierrez $8.00 per hour.

84.     From approximately January 2016 until on or about September 15, 2016, Defendants paid Plaintiff Gutierrez $9.00 per hour

85.     Plaintiff Gutierrez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

86.     For example, from approximately September 2015 until on or about November 2015, Defendants required Plaintiff Gutierrez to start working one hour prior to his scheduled start time and continue working 30 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

87.     Defendants deducted $2 .50 per shift from Plaintiff Gutierrez's weekly paycheck for meals he never ate.

88.     Plaintiff Gutierrez was never notified by Defendants that his tips were being included as an offset for wages.

89.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gutierrez's wages.

90.     Defendants withheld a portion of Plaintiff Gutierrez's tips; specifically, Defendants pocketed a portion of all tips customers paid.

91.     On numerous occasions, Plaintiff Gutierrez was not required to keep track of his time; specifically, on at least one fourth of the days he worked for defendants, Plaintiff Gutierrez did not punch in when he arrived and on several occasions he did not punch out.

92.     Defendants took improper and illegal deductions from Plaintiff Gutierrez's wages; specifically, Defendants deducted $2.50 per shift from Plaintiff Gutierrez's weekly wages for meal breaks he did not eat.

93.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gutierrez regarding overtime and wages under the FLSA and NYLL.

94.     Defendants did not provide Plaintiff Gutierrez an accurate statement of wages, as required by NYLL 195(3).

95.     In fact, Defendants adjusted Plaintiff Gutierrez's paystubs so that they only reflected his scheduled hours and not the actual hours he worked.

- 14 -

96.     Defendants did not give any notice to Plaintiff Gutierrez, in English and in Spanish (Plaintiff Gutierrez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

97.     Defendants required Plaintiff Gutierrez to purchase "tools of the trade" with his own funds—including a helmet, a vest, bicycle headlights, weather boots, a bicycle, and bicycle maintenance.

98.     Defendants also refused to pay Plaintiff Gutierrez the commissions they always paid for recruited workers;   specifically, Plaintiff Gutierrez recruited three workers for defendants and they did not pay him the $500 in commissions that they always paid for each recruited worker.

*Plaintiff Eutiquio Leon Garcia*

99.     Plaintiff Leon was employed by Defendants from approximately September 2013 until on or about August 30, 2019.

100.    Defendants ostensibly employed Plaintiff Leon as a delivery worker.

101.    However, Plaintiff Leon was also required to spend a significant portion of his work day performing the non-tipped duties described above.

102.    Although Plaintiff Leon ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

103.    Plaintiff Leon regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

104.    Plaintiff Leon's work duties required neither discretion nor independent judgment.

105.    From approximately October 2013 until on or about December 2016, Plaintiff Leon worked from approximately 4:00 p.m. until on or about 11:00 p.m. to 11:30 p.m., 7 days a week (typically 49 to 52.5 hours per week).

106.    From approximately December 2016 until on or about July 2019, Plaintiff Leon worked from approximately 5:00 p.m. until on or about 11:00 p.m. to 11:30 p.m., 7 days a week (typically 42 to 45.5 hours per week).

107.    From approximately July 2019 until on or about August 30, 2019, Plaintiff Leon worked from approximately 5:30 p.m. until on or about 9:30 p.m., 1 day a week and from approximately 5:30 p.m. until on or about 10:00 p.m. to 10:30 p.m., 3 days a week (typically 17.5 to 19 hours per week).

108.    Throughout his employment, Defendants paid Plaintiff Leon his wages by check.

109.    From approximately October 2013 until on or about December 2018, Defendants paid Plaintiff Leon $9.00 per hour.

110.    From approximately January 2019 until on or about August 30, 2019, Defendants paid Plaintiff Leon $10.50 per hour.

111.    Plaintiff Leon's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

112.    For example, Defendants required Plaintiff Leon to work an additional 30 minutes past his scheduled departure time three days a week, and did not pay him for the additional time he worked.

113.    Defendants deducted $2.50 per shift from Plaintiff Leon's weekly paycheck for meals he never ate.

114.    Plaintiff Leon was never notified by Defendants that his tips were being included as an offset for wages.

115.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Leon's wages.

116.    Defendants withheld a portion of Plaintiff Leon's tips; specifically, Defendants withheld all of the tips customers wrote in for Plaintiff Leon through Grubhub, Seamless, and Chownow.

117.    Defendants took improper and illegal deductions from Plaintiff Leon's wages; specifically, Defendants deducted $2.50 per shift from Plaintiff Leon's weekly wages for meal breaks he did not take.

118.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Leon regarding overtime and wages under the FLSA and NYLL.

119.    Defendants did not provide Plaintiff Leon an accurate statement of wages, as required by NYLL 195(3).

120.    In fact, Defendants adjusted Plaintiff Leon's paystubs so that they reflected fewer hours than what he actually had worked.

121.    Defendants did not give any notice to Plaintiff Leon, in English and in Spanish (Plaintiff Leon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

122.    Defendants required Plaintiff Leon to purchase "tools of the trade" with his own funds—including bicycle breaks, two helmets, shirts, pants, and bicycle maintenance.

123.    Defendants also refused to pay Plaintiff Leon the commissions they always paid employees for recruiting new workers;    specifically, Plaintiff Leon recruited three workers for defendants and they only paid him $500 for one of the workers, $250 for the second worker and nothing for the third worker, instead of the $500 that defendants always paid for each recruited worker.

*Plaintiff Hugo Alejandro Gallardo*

124.    Plaintiff Gallardo was employed by Defendants from approximately August 2016 until on or about February 2019.

125.    Defendants ostensibly employed Plaintiff Gallardo as a waiter.

126.    However, Plaintiff Gallardo was also required to spend a significant portion of his work day performing the non-tipped duties described above.

127.    Although Plaintiff Gallardo ostensibly was employed as a waiter, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

128.    Plaintiff Gallardo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

129.    Plaintiff Gallardo's work duties required neither discretion nor independent judgment.

130.    From approximately September 1, 2015 until on or about May 8, 2016, Plaintiff Gallardo worked from approximately 4:00 p.m. until on or about 10:00 p.m., 5 days a week (typically 30 hours per week).

131.    From approximately May 8, 2016 until on or about July 31, 2016, Plaintiff Gallardo worked from approximately 7:00 a.m. until on or about 11:00 a.m. and from approximately 12:00 p.m. until on or about 6:00 p.m., 5 days a week (typically 40 to 50 hours per week).

132.    From approximately August 1, 2016 until on or about October 15, 2017, Plaintiff Gallardo worked from approximately 4:00 p.m. until on or about 10:00 p.m., 5 days a week, twice a month and from approximately 4:00 p.m. until on or about 10:00 p.m., 6 days a week, twice a month (typically 30 to 36 hours per week).

133.    From approximately October 16, 2017 until on or about December 3, 2017, Plaintiff Gallardo worked from approximately 7:00 a.m. until on or about 11:00 a.m. and from approximately

12:00 p.m. until on or about 4:00 p.m. until on or about 6:00 p.m., 5 days a week (typically 40 to 50 hours per week).

134.    From approximately December 4, 2017 until on or about January 30, 2019, Plaintiff Gallardo worked approximately 30 to 39 hours per week.

135.    Throughout his employment, Defendants paid Plaintiff Gallardo his wages by check.

136.    From approximately September 1, 2015 until on or about December 31, 2015, Defendants paid Plaintiff Gallardo $5.00 per hour.

137.    From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Gallardo $7.50 per hour.

138.    From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Gallardo $7.50 per hour.

139.    From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Gallardo $8.65 per hour.

140.    From approximately January 1, 2019 until on or about January 30, 2019, Defendants paid Plaintiff Gallardo $10.00 per hour.

141.    However, when he worked double shifts, Defendants paid Plaintiff Gallardo $20.00 per hour.

142.    Defendants deducted $2.50 per shift from Plaintiff Gallardo's weekly paycheck for meals he never ate.

143.    Plaintiff Gallardo was never notified by Defendants that his tips were being included as an offset for wages.

144.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gallardo's wages.

145.    Defendants took improper and illegal deductions from Plaintiff Gallardo's wages; specifically, Defendants deducted $2.50 per shift from Plaintiff Gallardo's weekly wages for meals he did not eat.

146.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gallardo regarding overtime and wages under the FLSA and NYLL.

147.    Defendants did not provide Plaintiff Gallardo an accurate statement of wages, as required by NYLL 195(3).

148.    Defendants did not give any notice to Plaintiff Gallardo, in English and in Spanish (Plaintiff Gallardo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

149.    Defendants required Plaintiff Gallardo to purchase "tools of the trade" with his own funds—including shoes, pants, and shirts.

*Plaintiff Jose Garcia*

150.    Plaintiff Garcia was employed by Defendants from approximately April 25, 2019 until on or about August 16, 2019.

151.    Defendants ostensibly employed Plaintiff Garcia as a waiter.

152.    However, Plaintiff Garcia was also required to spend a significant portion of his work day performing the non-tipped duties described above.

153.    Although Plaintiff Garcia ostensibly was employed as a waiter, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

154.    Plaintiff Garcia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

155.    Plaintiff Garcia's work duties required neither discretion nor independent judgment.

156.    From approximately April 25, 2019 until on or about August 16, 2019, Plaintiff Garcia worked from approximately 8:00 a.m. until on or about 3:00 p.m. to 5:00 p.m., 4 days a week and from approximately 9:00 a.m. until on or about 5:00 p.m. to 7:00 p.m., 2 days a week three weeks per month (typically 44 hours per week).

157.    From approximately April 25, 2019 until on or about August 16, 2019, Plaintiff Garcia worked from approximately 8:00 a.m. until on or about 3:00 p.m. to 5:00 p.m., 4 days a week and from approximately 9:00 a.m. until on or about 12:00 a.m., one day a week one week per month (typically 71 hours per week).

158.    Throughout his employment, Defendants paid Plaintiff Garcia his wages by check.

159.    From approximately April 25, 2019 until on or about August 16, 2019, Defendants paid Plaintiff Garcia $10.00 per hour.

160.    For approximately one week, Defendants did not pay Plaintiff Garcia any wages for his work.

161.    Plaintiff Garcia's pay did not vary even when he was required to stay later or work a longer day than her usual schedule.

162.    For example, Defendants required Plaintiff Garcia to work an additional 2 hours past his scheduled departure time regularly, and did not pay him for the additional time he worked.

163.    Defendants deducted $2.50 per shift from Plaintiff Garcia's weekly paycheck for meals he never ate.

164.    Plaintiff Garcia was never notified by Defendants that his tips were being included as an offset for wages.

165.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Garcia's wages.

166.    Although Plaintiff Garcia was required to keep track of his time, defendants required him to use a different pin number for each shift in order to avoid paying him overtime when he worked two shifts in one day.

167.    On a number of occasions, Defendants required Plaintiff Garcia to sign a document, the contents of which he was not allowed to review in detail.

168.    Defendants took improper and illegal deductions from Plaintiff Garcia's wages; specifically, Defendants deducted $2.50 per shift from Plaintiff's Garcia weekly wages for meal breaks he never took.

169.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garcia regarding overtime and wages under the FLSA and NYLL.

170.    Defendants did not provide Plaintiff Garcia an accurate statement of wages, as required by NYLL 195(3).

171.    In fact, Defendants adjusted Plaintiff Garcia's paystubs so that they reflected inaccurate wages and hours worked.

172.    Defendants did not give any notice to Plaintiff Garcia, in English and in Spanish (Plaintiff Garcia's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

173.    Defendants required Plaintiff Garcia to purchase "tools of the trade" with her own funds—including two pairs of shoes, three white shirts, two pairs of jeans.

*Plaintiff Gilberto Lucas Tolentino*

174.    Plaintiff Tolentino was employed by Defendants from approximately February 2018 until on or about September 28, 2019.

175.    Defendants ostensibly employed Plaintiff Tolentino as a food runner.

176.    However, Plaintiff Tolentino was also required to spend a significant portion of his work day performing the non-tipped duties described above.

177.    Although Plaintiff Tolentino ostensibly was employed as a food runner, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

178.    Plaintiff Tolentino regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

179.    Plaintiff Tolentino's work duties required neither discretion nor independent judgment.

180.    Throughout his employment with Defendants, Plaintiff Tolentino regularly worked in excess of 40 hours per week.

181.    From approximately February 2018 until on or about September 28, 2019, Plaintiff Tolentino worked from approximately 4:00 p.m. until on or about 9:00 p.m., on Mondays, from approximately 10:00 a.m. until on or about 3:30 p.m., on Tuesdays, from approximately 4:30 p.m. until on or about 10:00 p.m., on Wednesdays, from approximately 4:30 p.m. until on or about 10:00 p.m., on Thursdays, from approximately 4:30 p.m. until on or about 11:00 p.m., on Fridays and from approximately 8:30 a.m. until on or about 4:00 p.m., on Saturdays two weeks per month (typically 44.5 hours per week).

182.    From approximately February 2018 until on or about September 28, 2019, Plaintiff Tolentino worked from approximately 4:00 p.m. until on or about 9:00 p.m., on Mondays, from approximately 10:00 a.m. until on or about 3:30 p.m., on Tuesdays, from approximately 4:30 p.m. until on or about 10:00 p.m., on Wednesdays, from approximately 11:30 a.m. until on or about 3:30 p.m., and from approximately 4:30 p.m. until on or about 10:00 p.m., on Thursdays, from approximately 4:30 p.m. until on or about 11:00 p.m., on Fridays and from approximately 8:30 a.m. until on or about 4:00 p.m., and from approximately 5:30 p.m. until on or about 10:00 p.m., on

Saturdays two weeks per month (typically 47 hours per week).

183.    Throughout his employment, Defendants paid Plaintiff Tolentino his wages by check.

184.    From approximately February 2018 until on or about December 2018, Defendants paid Plaintiff Tolentino $8.65 per hour.

185.    From approximately January 2019 until on or about September 28, 2019, Defendants paid Plaintiff Tolentino $10.00 per hour.

186.    Defendants deducted $2.50 per shift from Plaintiff Tolentino's weekly paycheck for meals he never ate.

187.    Plaintiff Tolentino was never notified by Defendants that his tips were being included as an offset for wages.

188.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Tolentino's wages.

189.    Defendants withheld a portion of Plaintiff Tolentino's tips; specifically, Defendants withheld approximately $80 per week from all the tips customers wrote in for Plaintiff Tolentino.

Although Plaintiff Tolentino was required to keep track of his time, he did not punch in or out on several occasions.

190.    On a number of occasions, Defendants required Plaintiff Tolentino to sign a document, the contents of which he was not allowed to review in detail.

191.    Defendants took improper and illegal deductions from Plaintiff Tolentino's wages; specifically, Defendants deducted $2.50 per shift from Plaintiff Tolentino's weekly wages for meals he never ate.

192.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Tolentino regarding overtime and wages under the FLSA and NYLL.

193.    Defendants did not provide Plaintiff Tolentino an accurate statement of wages, as required by NYLL 195(3).

194.    Defendants did not give any notice to Plaintiff Tolentino, in English and in Spanish (Plaintiff Tolentino's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

195.    Defendants required Plaintiff Tolentino to purchase "tools of the trade" with his own funds—including uniform shirts, pants, shoes.

*Defendants' General Employment Practices*

196.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

197.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

198.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

199.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

200.    Defendants required Plaintiffs and all other tipped workers to perform general non-tipped tasks in addition to their primary duties.

201.    Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

202.    Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

203.    Plaintiffs and all other tipped workers were paid at the lower tipped credit rate by Defendants.

204.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

205.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

206.    In violation of federal and state law as codified above, Defendants classified Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was equal to the lower tipped credit rate, when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

207.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

208.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

209.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as a bartender, a barback, busboys, waiters, delivery workers, food runners for the tips they received.

210.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving a bartender, a barback, busboys, waiters, delivery workers, food runners of a portion of the tips earned during the course of employment.

211.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

212.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit or pay them the full hourly minimum wage.

213.    Defendants' time keeping system did not reflect the actual hours Plaintiffs worked.

214.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail. Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

215.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

216.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

217.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

218.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

219.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

220.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA and Rule 23 Class members"), i.e., persons who are or

were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA and Rule 23 Class Period").

221.    At all relevant times, Plaintiffs and other members of the FLSA and Rule 23 Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

222.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

223.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

224.    Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

225.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

226.    There are questions of law and fact common to the Class including:

    a)  What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b) What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c) What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d) Whether Defendants failed and/or refused to pay Plaintiffs the minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

e) Whether Defendants failed and/or refused to pay Plaintiffs "Spread of Hours" Pay;

f) Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

g) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

h) What are the common conditions of employment and in the workplace, such as recordkeeping, clock-in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

227. The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

228. The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

229. The common questions of law and fact predominate over questions affecting only individual members.

230.    A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

231.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

### FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

232.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

233.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

234.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

235.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

236.    Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

237.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

238.    Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

239.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

240.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

241.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

242.    Plaintiffs (and the FLSA and Rule 23 Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

243.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

244.    At all times relevant to this action, Defendants were Plaintiffs'(and the FLSA and Rule 23 class members') employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

245.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs (and the FLSA and Rule 23 class members) less than the minimum wage.

246.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

247.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

248.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

249.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

250.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

251.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

252.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

253.    Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 class members) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

254.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

255.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

256.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

257.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

258.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

259.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

260.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

261.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

262.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

263.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

264.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

### OF THE NEW YORK LABOR LAW

265.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

266.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

267.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

268.    Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

269.    Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

270.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

## OF THE NEW YORK LABOR LAW

271.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

272.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

273.    Defendants made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for meals they never ate.

274.    The deductions made from Plaintiffs' wages were not authorized or required by law.

275.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

276.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
## FAILURE TO PAY COMMISSIONS FOR RECRUITMENT OF WORKERS

277.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

278.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

279.    Defendants had a policy of paying employees $500 for each worker they recruited.

280.    Defendants refused to pay Plaintiffs Gutierrez and Leon $500 for each of the workers they recruited.

281.    Plaintiffs Gutierrez and Leon (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

282.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

283.    Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

284.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and Rule 23 Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA and Rule 23 Class members;

(f)     Awarding Plaintiffs and the FLSA and Rule 23 Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA and Rule 23 Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)      Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs (and the FLSA and Rule 23 class members);

(k)      Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs and members of the FLSA and Rule 23 Class;

(l)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' and members of the FLSA and Rule 23 Class compensation, hours, wages and any deductions or credits taken against wages;

(m)      Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)      Awarding Plaintiffs members of the FLSA and Rule 23 Class damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)      Awarding Plaintiffs members of the FLSA and Rule 23 Class damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)      Awarding Plaintiffs members of the FLSA and Rule 23 Class liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)      Awarding Plaintiffs members of the FLSA and Rule 23 Class and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)     Awarding Plaintiffs members of the FLSA and Rule 23 Class and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

October 16, 2019

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      /s/ Michael Faillace
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 5, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Duque Fallon

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      5 de septiembre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 4, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                 Edgar Rolando Gutierrez Lopez

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                4 de Septiembre del 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                    Telephone: (212) 317-1200
New York, New York 10165                                    Facsimile: (212) 317-1620

————

Faillace@employmentcompliance.com

September 4, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Eutiquio Leon Garcia

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:                 _Eutiquio Leon_

Date / Fecha:                      4 de septiembre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 1, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Gilberto Lucas Tolentino

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      1 de octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 19, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Hugo Alejandro Gallardo

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:          Hugo A Gallardo

Date / Fecha:               19 de septiembre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 3, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                      Jose Garcia

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       3 de septiembre 2019

*Certified as a minority-owned business in the State of New York*